# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Statesboro Division

In the matter of: )
)
JACK M. WILLIAMSON )
)
*Debtor* )
)
)
)
PEOPLES BANK )
)
*Movant* )
)
)
)
v. )
)
JACK M. WILLIAMSON )
)
*Respondent* )

Chapter 12 Case

Number 07-60416

2008 MAR 24 PM 3:37
U.S. BANKRUPTCY COURT
SAVANNAH, GA
SAMUEL L. KAY, CLERK

**MEMORANDUM AND ORDER ON MOTION FOR RELIEF FROM STAY**

This case began as a voluntary Chapter 12 filed on July 26, 2007. People's Bank ("Bank"), the major secured lender to Debtor, seeks relief from the automatic stay to enforce state-created remedies on a portion of the collateral consisting of farm equipment, vehicles and antique automobiles. After a trial on the merits conducted on January 11, 2008, I enter the following Findings of Fact and Conclusions of Law.

AO 72A
(Rev. 8/82)

**FINDINGS OF FACT**

Debtor is a cotton farmer in Lyons, Georgia, and has been farming for twenty-nine years. In 2005 and 2006, Debtor farmed approximately 2,000 acres of cotton utilizing "no-till" methodology. In 2007, Debtor was only able to harvest 138 of a possible 1,300 acres of cotton due to a drought and sporadic torrential downpours. For 2008, Debtor testified that he expects to farm 1,300 acres of cotton, soy beans, peanuts, and wheat. Debtor also testified that he would fund 20% to 30% of his reorganization plan payments from income earned by using his antique cars for advertisements, weddings, and proms and 70% to 80% of the plan payments from farming.

On August 28, 2007, the Bank filed a motion for relief from the automatic stay. According to testimony, the Bank made several loans to Debtor over the last three years. The current balance is approximately $386,311.00 and is secured by the 2006 cotton crop, his antique cars, farming equipment and attachments, trucks, tractors, and an assignment of his life insurance policy. *See* Motion for Relief from Stay, Dckt.No. 26, p.2 and Exhibit A (August 28, 2007); Plaintiff's Ex. 4-5. The parties have stipulated that there is no equity in the collateral. Therefore, the sole issue for this Court is whether the collateral is necessary for an effective reorganization pursuant to 11 U.S.C. §362(d)(2)(B).

The Bank asks this Court to grant relief only as to some of the collateral. An expert witness, a farm management consultant, was called to testify by the Bank concerning the necessity of the collateral needed in a no-till cotton farming operation on 1300 acres of

land. The list of collateral the Plaintiff's expert deemed necessary and unnecessary is found in Plaintiff's Exhibit 3.

The Bank's expert articulated five reasons why certain equipment was not necessary: (1) the antique cars serve no purpose for the production of a cotton crop; (2) there is sufficient remaining equipment that is well-suited to perform the same tasks as the older pick-up trucks, several of the tractors, the cotton pickers, sprayers, planters, and cotton houses which he deems necessary; (3) some of the tractors do not have enough horsepower or hydraulic power to perform a no-till cotton farming operation; (4) the cultivator is not necessary since it has been replaced by one of the newer sprayers; and (5) a tow truck is not necessary because it is cheaper to hire one than to maintain one.

In addition, the Bank argues that since the antique cars have generated less than $1,000.00 in income, which is not shown in the monthly reports, and since this income was obtained very sporadically since the filing, it is both insignificant and speculative to support Debtor's projection that 20% to 30% of the funding would be realized from this activity.

At the hearing, in arguing that all the collateral is necessary for an effective reorganization, Debtor contended that (1) he needs all the collateral in 2008 because he expects to not only farm 1,300 acres of cotton but also soy beans, peanuts, and wheat; (2) when harvesting cotton, some of the farming equipment breaks down and replacements are

needed; (3) a tow truck is needed to haul tractors if they break down; (4) a bulldozer is needed, for example, to push trees out of the field after a storm; (5) two cotton presses, an additional cotton house module, and additional sprayers are needed to make the work more efficient since the work would take less time; (6) the flat bed dump truck is used to haul grain and is more convenient than taking several trips with a pick-up truck or having it delivered; (7) he has performed three jobs using his antique cars since filing for bankruptcy, and he needs his antique cars to fund his reorganization plan; and (8) Debtor is expecting insurance proceeds from the Farm Service Agency which will help fund his reorganization plan.

After the hearing, Debtor's counsel filed a proposed order which scaled down the items of collateral which he asks the Court to keep in Debtor's possession. Many of the items proposed for surrender matched the Bank's position. However, significant differences remain.

Debtor suggests that certain collateral be surrendered which Bank's expert felt was necessary to Debtor, while retaining some collateral which Bank's expert deemed unnecessary. In other words, Debtor in effect proposes a roughly equivalent swap of items he prefers to keep for items the expert conceded were necessary to his reorganization. Debtor also proposes to surrender the following two items: (1) Berkley, M4JQBH Pump, Vin# 620436MDL; and (2) John Deere, 150HP Motor, Vin# 303431R.

Debtor is a hardworking, dedicated farmer, who for many years has run a

successful and profitable operation. He is a long-time customer of the Bank, and it is clear that their relationship is deep and, at least until recently, very cordial. Unfortunately, at some point, like many farmers, he began to struggle financially. This culminated with serious problems during the 2007 crop year, much of which was triggered by the severe drought during the spring and early summer, followed by torrential rains. The up-shot of his difficulties and inability to service the Bank's debt of nearly $400,000.00 in principal alone led the Bank to seek a writ of possession to recover its collateral under state law. That, in turn, triggered Mr. Williamson's filing of this Chapter 12. He has filed a plan, and it is pending confirmation, but confirmation must await the Court's determination of what equipment he will retain for his farming operations.

## CONCLUSIONS OF LAW

After consideration of all of the facts in this case and applicable authorities, I conclude that the Bank's Motion for Relief should be granted in part. 11 U.S.C. § 362(d) provides that on a creditor's request, stay relief shall be granted if (a) the debtor does not have equity in the collateral, and (b) the collateral is not necessary to an effective reorganization. The parties were ultimately able to stipulate that the total value of collateral pledged to the Bank is less than the amount of the debt. Therefore, the element of lack of equity is met.

The Court's determination then turns on whether the collateral in issue is "necessary to an effective reorganization." Establishing that element is the debtor's burden

under 11 U.S.C. § 362(g)(2). The standard for determining what is necessary for an effective reorganization has been articulated in a number of cases. Debtor needs to explain how income from the farming equipment will fund the farming operations and debt repayment. *See* United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365, 375-76, 108 S.Ct. 626, 633 (1988)(To meet this burden, Debtor must make "not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means... that there must be 'a reasonable possibility of a successful reorganization within a reasonable time' . . . ); In re Gross Farm & Feed, Inc., 1999 WL 34754117, at *3 (Bankr.D.Idaho)("While farm equipment is undoubtedly necessary to any future attempt to reorganize a custom harvesting operation, the Debtor is required to present more than just that self-evident argument.").

Upon consideration of the expert testimony, coupled with Debtor's testimony, I conclude that most of the equipment which the Bank seeks to take possession of and sell to reduce its debt has, in fact, not been demonstrated to be necessary to the Debtor's effective reorganization. Exhibit 3, which is incorporated in this order by reference, highlights item-by-item each of the pieces of collateral.

The Bank's expert's testimony was based upon the assumption that Debtor would continue to farm cotton utilizing no-till methodology. Although Debtor testified that he contemplated planting other crops this year (peanuts, soy beans, wheat, corn, tobacco and

oats), he farmed only cotton and utilized no-till farming for crop years 2005, 2006 and 2007 and previously testified that he was undecided whether cotton would be his sole crop for 2008. *See* Res.Dep. 113:8-9, 12-14 (October 16, 2007). The expert had not inspected the equipment but had reviewed photographs which were received as exhibits by the Court, reviewed Debtor's deposition testimony, and assumes that all the equipment is being reasonably maintained. While that assumption may not be entirely supported by the facts, I accept and agree with the expert's testimony that if the property is not in operating condition and not being maintained, there is little, if any, use in Debtor's holding on to it. Indeed, it certainly cannot be demonstrated as necessary to the effective reorganization of a farm operation if it cannot be utilized to farm.

Against that background, I rule as follows. Debtor has failed to establish that the five antique automobiles listed on the collateral list are necessary to an effective reorganization. These are extremely valuable assets in which Debtor has justifiable pride, but in the context of substantial debt which is not being serviced and has no equity, the minimal amounts of money that he has generated from their use, less than $1,000.00 during 2007, is simply inadequate. I hold that he has not met his burden of showing that these cars are necessary to his financial reorganization no matter how desirable they might be as objects to enjoy and showcase in local community events or private parties.

The remainder of the vehicles highlighted as unnecessary in the opinion of the expert have similarly not been shown to be necessary to Debtor's reorganization. The

flat-bed dump truck, the tow truck, the bulldozer and extra cotton presses are desirable and at times useful, but the relative cost of holding on to them and paying for them, in relation to what they contribute to Debtor's profitability is insufficient for this Court to deem them necessary to his reorganization. Similarly, the thirty-four tractors listed have not all been shown to be necessary. The expert's testimony that a number of them have insufficient horsepower or hydraulic power to be utilized in a no-till cotton operation or are of such advanced age to be undesirable was persuasive. The expert made a reasonable decision, fully explained in his testimony, as to the seven tractors that he believed were necessary to a no-till cotton farming operation, and Debtor did not carry the burden of showing that any of the other tractors should be added to the list, with the exception of the lawn tractor used in and about Debtor's residence and farm.

Similarly, the list contains seventeen items of equipment and attachments which the expert questioned the necessity of and fourteen items which the expert deemed as necessary to no-till cotton farming on the scale Debtor contemplates. Debtor testified to the contrary that most, if not all, of the equipment indeed is necessary. For example, he believes that certain items such as an additional cotton picker, an additional cotton house module, and one or more sprayers are in fact necessary to his reorganization.

I conclude that Debtor's testimony establishes that for maximum efficiency at certain times of the year, it may very well be convenient or useful to have this additional equipment on hand in order to more speedily conduct certain farming operations in a time

sensitive fashion. However, similar to my earlier ruling on the vehicles and tractors, I conclude that a debtor in financial distress cannot afford the luxury of convenience, and the Bank should not be compelled to permit the luxury of Debtor having every conceivable piece of equipment which may on rare occasions be useful or convenient in his day-to-day operations. Rather, in order to reduce his debt as much as possible and maximize the viability of his core operations, it is necessary to occasionally cull out equipment which is only occasionally necessary but expensive to pay for in relation to the net marginal efficiency they may contribute to his case. *See* In re Endrex Exploration Co., 101 B.R. 474, 476 (N.D.Tex. 1988)(holding that while some depleting oil wells may be helpful to a reorganization, the wells are only contingent assets of the debtor and the feasibility of the plan based on the use of those assets is highly speculative thus they are not necessary for an effective reorganization); In re Patti, 1999 WL 223505, at *3 (Bankr.E.D.Pa. 1999)("If the property is merely a convenient situs for the production of income and other alternatives are available, the property is not necessary."); In re Christie, 159 B.R. 780, 788 (Bankr.E.D.Tex. 1993)(holding that the house subject to pending foreclosure is merely a luxury item which the debtors were trying to keep and "the fact that it is convenient for the Debtors to operate the business from their house does not make the house necessary for an effective reorganization."); In re Amarex, Inc., 30 B.R. 763, 767 (Bankr.Okla. 1983)(words "necessary for an effective reorganization" for purposes of denial of relief from automatic stay mean essential to an effective reorganization and not merely that it would be useful or helpful); In re Sulzer, 2 B.R. 630, 636 (Bankr.S.D.N.Y. 1980)(holding that despite the fact debtor's home was convenient to conduct his business, it was not necessary for an effective reorganization

since he had an office for business elsewhere).

Certainly, Debtor's position is understandable because when it is time to spray, to harvest, or to transport his crops, saving time and labor adds a marginal benefit to his bottom line. Again, however, he was unable to carry his burden of showing that these items are "necessary." In an appropriate cost benefit analysis, the expense of purchasing or financing this equipment, not essential to the core mission and function of the farming operation, simply cannot be justified during a reorganization.

However, following the hearing, Debtor's counsel filed a proposed order which, in effect, sought to surrender some of the collateral that the expert found necessary to an effective farming operation, for like-kind property which Debtor apparently prefers to use. Given the fact that Debtor is more familiar with the equipment, and that the essential scope of equipment retained and being surrendered is not drastically changed, I hold that Debtor may keep the following:

| MANUFACTURE NAME MODEL/DESCRIPTION | VEHICLE IDENTIFICATION NUMBER/SN# |
|---|---|
| Ford, 5000 Tractor | C448227 |
| Ford, 64 4100 Tractor | 470608 |
| John Deere, 2510 Tractor | 005094R |
| John Deere, LT155 Lawn Tractor | MOL155B010955 |
| Massey Ferguson, 135 Tractor | 1025252 |
| John Deere, 1992 #9960 Cotton Picker 4-Row | N09960X004095 |

AO 72A
(Rev. 8/82)

| KBH, 2003 Cotton House Module Builder with AutoGlide Automatic Operation & 10'2" Stripper Height Option, Hydraulic Rear Door Option | CH04170 |
|---|---|

But in exchange, Debtor must surrender the following items of collateral:

| MANUFACTURE NAME MODEL/DESCRIPTION | VEHICLE IDENTIFICATION NUMBER/SN# |
|---|---|
| John Deere, 1984 4850 Tractor | RW4850P005943 |
| John Deere, 1982 4840 Tractor | 17930 |
| John Deere, RW4955 Tractor | RW4955P003970 |
| John Deere, 91 #9960 Cotton Picker | N09960X002689 |
| KBH, Cotton House | CH03943 |
| Berkeley, MDL #M4JQBH Pump | 620436 |
| John Deere, 150HP Motor | 303431R |

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Motion of Peoples Bank IS GRANTED with regard to the non-antique automobiles, vehicles, tractors and equipment identified through the testimony of its expert other than the LT155 lawn tractor and subject to the above changes. Relief from stay is therefore granted with respect to the following collateral:

| MANUFACTURE NAME, MODEL/DESCRIPTION | VEHICLE IDENTIFICATION NUMBER/SN# |
|---|---|
| Chevy, 1981 2-Ton Truck | 1GBL7D1B77BV125054 |
| Chevy, 1984 C&C Truck with a flat bed and dump | 1GBLTD1B7EV116505 |
| Chevy, 1985 P/U Red/Silver | GCDC14H5FF413830 |
| Chevy, 1984 Truck | 1GBL7D1B7EV116505 |
| Ford, 5000 Tractor and Equipment | B892111 OR 89211 |
| Ford, 600 Tractor | 15839 |
| Ford, 4000 Tractor | 43847 OR 4387 |
| Ford, 871 Tractor Select 0 Speed | NSN |
| Ford, 1947 2N Tractor | 192744 |
| Ford, 1957 641 Tractor | 14431 |
| Ford, 861 Tractor | NSN |
| Ford, 1952 8-N Tractor V-8 | NSN |
| Ford, 1952 8-N Tractor 6-Cylinder | NSN |
| Ford, 4000 Tractor | 21312 |
| Ford, 4000 Tractor | 401640 |
| Ford, 601 Tractor | 16840 |
| Ford, 601 Tractor | 62743 |
| Ford, 66 3000 Tractor | 2A64146 |
| Ford, 801 Tractor | 17743 |
| Ford, 801 Tractor | 170691 |
| Ford, 801 Tractor | 186413 |
| Ford, 850 Tractor | 24436 |
| Ford, 8-N Tractor | 147904 |
| John Deere, 1530 Tractor | 142550 |
| John Deere, 6000 HY Cycle | AH2689 |
| John Deere, 86-30 Tractor | 009720R |
| Massey Ferguson, 135 Tractor | 9A108410 |

| | |
|---|---|
| John Deere, 9940 Cotton Picker | 57505 OR 0005105 |
| John Deere, EL699 Cotton Picker | 8004312 |
| John Deere, 9940 Cotton Picker | 4850P009941 |
| John Deere, 7700 Combine | 89741 |
| John Deere, 18FT Grain Platform | 104414 |
| John Deere, Bulldozer | 450ET0450EH722206OR 22203 |
| John Deere, Cultivator | 4021 |
| Haun, 670 High Boy Sprayer | 10132 |
| John Deere, 1271 Planters | |
| S&N, 8-Row Sprayer | NSN |
| KMC, 8-Row No-Till w/ Planters | NSN |
| Connon, 16-Row Sprayer | 1153 |
| Ford, Bottom Plow | 1014 |
| John Deere, Rotary Cutter | 28501610 |
| International, 1990 8000 Series-81 w/ 26FT Midwestern Wrecker Body Attached to Truck | 1HTHCGER2LH220825 |
| International, 1987 F9370 | 2HSFBGUR4HC002948 |
| John Deere, 1984 4850 Tractor | RW4850P005943 |
| John Deere, 1982 4840 Tractor | 17930 |
| John Deere, RW4955 Tractor | RW4955P003970 |
| John Deere, 91 #9960 Cotton Picker | N09960X002689 |
| KBH, Cotton House | CH03943 |
| Berkeley, MDL #M4JQBH Pump | 620436 |
| John Deere, 150HP Motor | 303431R |

IT IS FURTHER ORDERED that relief is granted in part with respect to the antique vehicles. Peoples Bank will be permitted to repossess and hold the vehicles in safekeeping pending further Order or at its option may permit Debtor to retain them. As to these, because of their substantial value, and the specialized means or markets by which they

are sold to achieve the very highest price, final relief will be granted only after consultation between the Court and counsel for the parties, and if necessary further hearing. The Court will consider (1) setting a credit amount to be applied to the account balance for each vehicle repossessed; (2) reserving the right to approve any private or public sale amount; (3) specifying the identity, time and location of a vehicle auction; or (4) any other method calculated to bring the highest and best price. I will also consider any suggestion as to the order in which particular vehicles may be sold. The remainder of the collateral not specified in this Order remains in the possession of the Debtor pending further proceedings in this reorganization case.

Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 24th day of March, 2008.