# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By lbarnard at 4:29 pm, Sep 03, 2008

| | |
|---|---|
| In the matter of: ) | |
| ) | Chapter 12 Case |
| JACK M. WILLIAMSON ) | |
| ) | Number <u>07-60416</u> |
| Debtor ) | |

## MEMORANDUM AND ORDER

  Debtor's case was filed on July 26, 2007. Numerous proceedings have been conducted in this case. In particular, People's Bank of Lyons ("People's Bank"), a major secured lender, filed a Motion for Relief from Stay seeking Court permission to repossess a substantial amount of Debtor's farm equipment, vehicles, and antique automobiles. By Order entered on March 24, 2008, I granted that Motion in part with certain conditions. *See* <u>Order on Motion for Relief from Stay</u>, Dckt.No. 110. On April 3, 2008, Debtor filed a Motion to Reconsider that Order. *See* <u>Motion to Reconsider</u>, Dckt.No.114. People's Bank filed a response on April 17, 2008. *See* <u>Response</u>, Dckt.No. 120. The parties subsequently engaged in a Rule 2004 Examination, together with informal discovery, seeking a reconciliation of certain discrepancies in the collateral list which constituted People's Bank's security for its loan and determining what the Debtor actually had in his possession.

  While that Motion was still pending, Debtor filed a Motion to Voluntarily Dismiss his Chapter 12 on June 19, 2008. *See* <u>Motion to Dismiss</u>, Dckt.No. 157. In

response, objections were filed by the Office of the United States Trustee on June 20, 2008, *see* Dckt.No. 158, by People's Bank on June 23, 2008, *see* Dckt.No. 161, and by Montgomery Bank on July 3, 2008, *see* Dckt.No. 162. The Objection of the United States Trustee also sought conversion of the Debtor's case to Chapter 7. A hearing was conducted in Statesboro, Georgia, on July 18, 2008, and based on the evidence at that time, taking judicial notice of the prior proceedings in this case, and in light of persuasive authority on the issue, I enter the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor's gross income in 2006 was $599,000.00, only $16,000.00 of which was non-farm income. Exhibit D-1. He filed his Chapter 12 in 2007, and at the time of the hearing he had no funds available for conducting farming operations. Because of this, he concludes it is not feasible for him to propose a Chapter 12 reorganization plan. In addition, because of this Court's rulings on stay relief on the People's Bank Motion, together with consensual stay relief orders Debtor has agreed to, a substantial portion of this property has been surrendered, and he believes there could be no benefit to creditors if the case proceeds under either Chapter 12 or Chapter 7.

Debtor argues that he "has an unqualified right for immediate dismissal of a Chapter 12 Bankruptcy upon the filing of a motion to dismiss pursuant to 11 U.S.C. § 1208(b)." Brief in Support of Debtor's Motion to Dismiss, Dckt.No. 169, pg. 3 (August 1,

2008). The United States Trustee argues that Debtor's right to dismissal is limited by § 1208(d) and that since Debtor has participated in fraudulent conduct that abused the provisions of Chapter 12, Debtor's case should be converted to a Chapter 7 rather than dismissed. Brief in Support of Request for Conversion, Dckt.No. 174, pg. 7.

In his bankruptcy Schedule B, Debtor marked "none" in the category "checking, savings, or other financial accounts." Amended Petition, Dckt. No. 11, pg.7 (August 11, 2007). Question 18 in his Amended Statement of Financial Affairs required him to reveal the name of any business in which he had been engaged, whether a corporation, partnership, or proprietorship, and Debtor answered the question "none." Amended Petition, Dckt.No. 11, pg. 36 (August 11, 2007). Debtor's declaration concerning his schedules was signed under penalty of perjury on August 10, 2007. Declaration, Dckt.No. 15 (August 13, 2007). At the July 18, 2008, hearing, he conceded that he had one account at the Montgomery Bank and at least three accounts at the Altamaha Bank that were open on the date of filing in the name of J & K Farms, an entity which he controlled as a solely owned proprietorship. Neither the name of that business nor the existence of the accounts was revealed in any of his schedules. Debtor admits that at one Rule 2004 examination he denied the existence of these bank accounts. At another Rule 2004 examination he revealed only one of the accounts, despite the fact that it is now known that there were four separate accounts. *See* Exhibit UST-8, page 24.

None of this was corrected when he amended his schedules on October 11, 2007. On that date, Debtor filed an amended Schedule B. Items 13 and 14 on the Schedule B, which require debtors to reveal their interests in incorporated or unincorporated businesses, partnerships or joint ventures, is marked "none." Item 21 of Schedule B requires Debtor to reveal the existence of any claims held against another person or entity, and he answered "none" to that question, but now concedes that he had a crop disaster claim for the year 2006 for which he subsequently obtained significant proceeds. <u>Amended Schedule B</u>, Dckt.No. 48. Only in June of 2008, did Debtor file an amendment to his petition revealing the J & K Farms entity, four bank accounts at Altamaha Bank, and his claim to 2007 crop insurance proceeds. <u>Amendment</u>, Dckt. No. 156 (June 19, 2008).

Debtor filed monthly operating reports as required of Chapter 12 family farmers. <u>See</u> Exhibit UST-4. In his July 2007 report, he showed total cash in his bank accounts as of July 2007 of $1,831.57, but a comparison of the Altamaha Bank statement shows that as of June 30, 2006, he had a balance of $8,720.21 in one account (Exhibit UST-3), a balance of $854.95 in another (Exhibit UST-11), and a balance of $150.88 in third (Exhibit UST-10).

At the hearing, Debtor acknowledged receipt of Farm Service Agency ("FSA") payments of $3,220.00 on July 24, 2007, $3.184.00 on August 29, 2007, $6,124.00 on September 13, 2007, $2,180.00 on September 17, 2007, and $8,454.00 on October 11,

2007. One of the Altamaha Bank accounts showed FSA as a source of deposits totaling over $20,000.00. *See* Exhibit UST-3. Debtor's monthly operating reports and Amended Schedule B on October 11, 2007, do not show any receipts of funds from FSA subsequent to the Debtor's filing during the months of July, August, September, and October. *See* Exhibit UST-4.

Debtor acknowledged after October 11 that he received the following deposits: $13,866.00 on October 15; $6,890.00 on November 5; $2,266.00 on November 8; $7,500.00 on December 7; $27,472.00 on December 27; $13,840.00 on January 9, 2008; $15,274.00 on January 15; $3,706.00 on January 16, among many others. *See* Exhibit UST-3, pg. 5. None of these deposits were reported. The total amount of FSA deposits in this one bank account was $113,076.00 and non-FSA related deposits was $13,500.00. Debtor also received over $71,000.00 for a 2007 cotton crop, *see* Exhibit UST-13, but at the Rule 2004 Examination he admitted to only $6,100.00 in proceeds from cotton. Exhibit UST-8, page 43.

On January 18, 2008, Debtor withdrew $72,796.08 and $9,900.00 from one of the Altamaha Bank and Trust accounts. Exhibit UST-3. He testified that he took these withdrawals in the form of a cashier's check and cash. He later deposited the cashier's check and converted the amount into cash. He then placed all the cash in a metal box into a corn bin on his farm. He now alleges that he subsequently discovered that that metal box and the

contents are missing and presumed stolen.

Finally, testimony of the representative handling the Montgomery Bank account was uncontradicted that when the bank attempted to repossess collateral pursuant to a consent order granting stay relief (Dckt.No. 126), he found substantial missing collateral, the serial number plates to a vintage Chevrolet Camero automobile removed, and some of the collateral stripped or otherwise vandalized.

## CONCLUSIONS OF LAW

The Court's decision is governed by the provisions of 11 U.S.C. § 1208(b) and (d) which provide as follows:

> (b) On request of the debtor at any time, if the case has not been converted under section 706 or 1112 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.
>
> (d) On request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter or convert a case under this chapter to a case under chapter 7 of this title upon a showing that the debtor has committed fraud in connection with the case.

As the parties articulated and I agree, there is a threshold question for the Court to address: whether under 11 U.S.C. § 1208(d), a court may involuntarily convert a Chapter 12 case to

Chapter 7 despite the debtor's request for voluntary dismissal under 11 U.S.C. §1208(b).

Relying on <u>In re Davenport</u>, 175 B.R. 355 (Bankr.E.D.Cal. 1994), Debtor contends that he has an absolute right to dismiss under § 1208(b) that is not limited by any good faith or fraud restrictions. The United States Trustee and the creditors contend that subsection (d) creates an exception when fraud has been committed by a debtor in connection with his case; that the Court is empowered to conduct a hearing to entertain any objections; and that if the evidence establishes that Debtor has committed fraud in connection with this case, the case should be converted rather than dismissed.

The majority of courts that have addressed this threshold issue have held that § 1208(b) does not prohibit a bankruptcy court from converting a case under § 1208(d) if debtor has abused the provisions of Chapter 12 with fraudulent conduct. *See e.g,*, <u>Graven v. Fink (In re Graven)</u>, 936 F.2d 378 (8th Cir. 1991); <u>Neal v. W. Farm Credit Bank (In re Neal)</u>, 181 B.R. 560 (D.Utah 1995); <u>Foster v. N. Tex. Prod. Credit Ass'n (In re Foster)</u>, 121 B.R. 961 (N.D.Tex. 1990), *aff'd*, 945 F.2d 400 (5th Cir. 1991), *cert. denied*, 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 136 (1992); <u>In re Red Cliff Farms, Inc.</u>, slip op.,1994 WL 324560 (D.Kan., June 23, 1994); <u>In re Cromer Farms, Inc.</u>, slip op., 2000 WL 33740256 (Bankr.M.D.Ga., July 18, 2000); *see also* <u>In re Goza</u>, 142 B.R. 766, 770-71 (Bankr.S.D.Miss. 1992)(held that the debtor did not have the absolute right of dismissal and held that dismissal would be delayed until the debtor provided the court with an accounting of his assets and

activities during the time that he has been a debtor-in-possession.); *contra* <u>In re Davenport</u>, 175 B.R. 355 (Bankr.E.D.Cal. 1994).

I agree with the majority interpretation for the following reasons. First, the Eleventh Circuit has affirmatively held that this is the proper view. In <u>In re Cotton</u>, the Eleventh Circuit looked at the issue of "whether a Chapter 12 debtor, who has agreed with a major creditor to a settlement that has not yet been confirmed by the bankruptcy court, has a right to an immediate dismissal of his case upon request under 11 U.S.C. § 1208(b)." It held that "the debtor does have a right to immediate dismissal, provided that the case has not been converted to an involuntary proceeding and *the debtor has not engaged in fraud that would make an immediate dismissal unjust.*" 992 F.2d 311, 312 (11th Cir. 1993)(emphasis added). The court explained "once fraud has become an issue in a case, the court may delay acting on a section 1208(b) motion for dismissal long enough to allow an investigation of the alleged fraud. If fraud is shown, the court may, under 11 U.S.C. § 1208(d), convert the Chapter 12 case to Chapter 7 despite the debtor's motion to dismiss." <u>Id.</u> at 313. The Eleventh Circuit clearly affirms the majority view.

Second, if this Court were to adopt the <u>In re Davenport</u> holding, the express language of 11 U.S.C. §§ 1208(b) and (d) raises a potential conflict. Recognizing an immediate "absolute right to dismissal under section 1208(b) would completely undermine the express authority Congress granted the courts under section 1208(d) [in that it] would

render that subsection useless." Graven, 936 F.2d at 385; *see also* Neal, 181 B.R. at 562.

Third, the purpose of the Bankruptcy Code – to provide a "fresh start" for the "honest, but unfortunate debtor" – supports the majority view. *See* Graven, 936 F.2d at 385. Debtor argues that the express language of § 1208(b) gives a Chapter 12 debtor an unqualified right to immediate dismissal. The Supreme Court however has directed courts to not "construe statutory phrases in isolation." U.S. v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984). Besides looking at other provisions within the bankruptcy code, courts must also consider "the design of the statute as a whole and . . . its object and policy." Crandon v. U.S., 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). The Supreme Court has established the purpose of the Bankruptcy Code is to provide a "fresh start" for insolvent debtors. Grogan v. Garner, 498 U.S. 279, 286-87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). However, this fresh start is allowed only for the "honest, but unfortunate debtor." Id.(*quoting* Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). "The Supreme Court's statements make clear that the purpose of the bankruptcy code is to protect the honest debtor, not provide a shield for those who exploit the code's protection then seek to escape judicial authority when their fraudulent schemes are exposed." In re Graven, 936 F.2d at 385. As the Eighth Circuit Court of Appeals stated:

> To adopt the interpretation of § 1208(b) and (d) favored by
> the debtors . . . would lead to endless abuse of the

> bankruptcy process . . . and would clearly thwart the clear purpose of Chapter 12, which is to provide relief for the honest debtor, and the intent of Congress in adopting § 1208(d).

Id.(*quoting* Graven v. Fink (In re Fink), slip op. No. 89-3587-CV-S-2 at 12 (W.D.Mo., March 29, 1990).

Fourth, even if this court interpreted § 1208(b) to require a court to dismiss a Chapter 12 proceeding upon a debtor's request, "the express language of the statute does not mandate *immediate* dismissal." Neal, 181 B.R. at 562; *see* Graven, 936 F.2d at 385-86; In re Tyndall, 97 B.R. 266, 268 (Bankr.E.D.N.C. 1989). As a result,

> If, before the bankruptcy court acts on the debtor's dismissal request, a party in interest requests a conversion pursuant to the provisions of section 1208(d), the bankruptcy court may act on that motion. Once the case has been converted to Chapter 7, there is no case pending under chapter 12, and the debtors' request for dismissal becomes effectively moot. *See* 11 U.S.C. § 1208(b) ("On request of the debtor ...the court shall dismiss a case *under this chapter*.")(emphasis added).

Neal, 181 B.R. at 562.

For the foregoing reasons, I find that once fraud becomes an issue in a case, the court may delay action on a § 1208(b) motion for dismissal long enough to allow an investigation of the alleged fraud. If fraud is shown, the court may, under § 1208(d), convert

the Chapter 12 case to Chapter 7 despite the debtor's motion to dismiss.[1]

The second issue is whether "Debtor . . . abused the purposes of chapter 12 by engaging in fraud." In re Cromer Farms, Inc., 2000 WL 33740256, at *1. A finding of fraud under the Bankruptcy Code is a factual matter. *See* T&B Gen. Contracting, Inc. v. Ballenger Corp. (In re T&B Gen. Contracting, Inc.), 833 F.2d 1455, 1458-60 (11th Cir. 1987); First Ala. Bank of Montgomery v. First State Ins. Co., 899 F.2d 1045, 1057 (11th Cir. 1990). For the following reasons, I find that Debtor has abused the purposes of Chapter 12 by engaging in fraudulent conduct.

The findings of fact in this Order are replete with instances of concealment, false statements, and omissions that collectively evidence an intent to manipulate the bankruptcy process. Debtor filed his case over one year ago. He did not reveal at filing, or indeed in early amendments, that he owned J & K Farms and at least four bank accounts. He did not reveal a large crop disaster claim. He filed false monthly operating reports concealing large bank balances in the unrevealed accounts. He also concealed numerous large FSA deposits to his accounts. Finally, he withdrew large sums of money from one of the accounts, largely in cash, apparently the proceeds of his unrevealed crop disaster claim, and hid it in a corn bin from which he claims it has allegedly been stolen.

---

[1] Marrama v. Citizens Bank of Mass. interpreted similar provisions of Chapter 7 and held that a debtor who engaged in fraudulent conduct does not have the unlimited right to convert a Chapter 7 to a Chapter 13. 127 S.Ct. 1105, 1111-12 (2007).

Debtor's conduct is indefensible under any standard of conduct for debtors under bankruptcy protection, amounts to fraud on the Court and his creditors, and presents a text-book case for conversion under § 1208(d).

### ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that Debtor's Motion to Dismiss is denied and the United States Trustee's Motion to Convert is granted.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 2nd day of September, 2008.